**Slip Op. 05-30**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____ :
AL TECH SPECIALTY STEEL CORP., CARPENTER
TECHNOLOGY CORP., REPUBLIC ENGINEERED      :
STEELS, TALLEY METALS TECHNOLOGY, INC.
and UNITED STEELWORKERS OF AMERICA,        :
AFL-CIO/CLC,
                                           :
                        *Plaintiffs*,
                                           :
            v.
                                           :
UNITED STATES OF AMERICA,
                                           :
                        *Defendant*.
                                           :   Consol. Court No. 98-10-03061
_____ :
ACCIAIERIE VALBRUNA S.R.L. and             :
ACCIAIERIE DI BOLZANO S.P.A.,
                                           :
                        *Plaintiffs*,
                                           :
            v.
                                           :
UNITED STATES OF AMERICA,
                                           :
                        *Defendant*.
_____ :

[U.S. Department of Commerce's Final Results of Redetermination on Remand are sustained.]

Decided: March 9, 2005

Collier Shannon Scott, PLLC (David A. Hartquist, Laurence J. Lasoff, and R. Alan Luberda), for Plaintiffs/Defendant-Intervenors AL Tech Specialty Steel Corporation *et al*.

White & Case LLP (Walter J. Spak, Gregory J. Spak, and Richard J. Burke), for Plaintiffs/Defendant-Intervenors Acciaierie Valbruna S.r.l. *et al*.

        Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Stephen C. Tosini); Robert E. Nielsen, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel; for Defendant United States of America.

**OPINION**

RIDGWAY, Judge:

        In these consolidated actions, both the domestic parties (hereinafter collectively "AL Tech")[1] and two Italian producers/exporters of stainless steel wire rod have challenged various aspects of a Final Determination rendered by the U.S. Department of Commerce ("Commerce"), which found that the Government of Italy, the Province of Bolzano, and the European Union ("EU") provided countervailable subsidies to the two Italian producers – Acciaierie Valbruna S.r.l. ("Valbruna") and Acciaierie di Bolzano S.p.A. ("Bolzano") (hereinafter collectively "Valbruna/Bolzano"),[2] and which resulted in the imposition of a countervailing duty order.[3] *See* Certain Stainless Steel Wire Rod from

---

        [1]The domestic parties – AL Tech Specialty Steel Corp., Carpenter Technology Corp., Republic Engineered Steels, Talley Metals Technology, Inc., and the United Steelworkers of America, AFL-CIO/CLC – are Plaintiffs in the first of the two consolidated actions, as well as Defendant-Intervenors in the second.

        [2]Valbruna and Bolzano are Defendant-Intervenors in the first of the two consolidated actions, as well as Plaintiffs in the second.

        [3]Commerce may impose countervailing duties where it determines that a government or public entity in another country is providing a countervailable subsidy (*i.e.*, a financial contribution that confers a benefit on the recipient). Such subsidies may take the form of, *inter alia*, grants, loans, goods, or services, as well as less tangible forms (such as the foregoing of revenue – *e.g.*, rent or taxes – that would otherwise be due). 19 U.S.C. §§ 1671(a), 1677(5).

        To be countervailable, a subsidy must be "specific" – that is, it must not be generally available. A subsidy may be deemed specific if its availability is limited to, for example, certain enterprises, certain industries, or certain geographical regions. 19 U.S.C. § 1677(5A). Where the

Italy, 63 Fed. Reg. 40,474 (Dep't Commerce July 29, 1998) ("Final Determination"); Stainless Steel

Wire Rod from Italy, 63 Fed. Reg. 49,334 (Dep't Commerce Sept. 15, 1998) (countervailing duty

order).

As explained in AL Tech I, Commerce's original investigation identified 10 types of

government action considered to confer "subsidies," which collectively resulted in a calculated

subsidy rate of 1.28% – a rate only marginally above the statutory *de minimis* one percent threshold.[4]

Valbruna/Bolzano here challenged Commerce's determinations as to six of the 10 alleged subsidies,

emphasizing that its success in even a single one of its six challenges[5] could potentially shave off

enough to drop the subsidy rate below the *de minimis* threshold, rendering the countervailing duty

---

availability of a subsidy is limited expressly by legislation or by the subsidy- granting authority, the subsidy may be considered specific as a matter of law (*de jure* specific). Where, for example, the actual number of recipients is limited, or where a particular enterprise or industry is a predominant user of a subsidy, the subsidy may be considered specific as a matter of fact (*de facto* specific). 19 U.S.C. § 1677(5A)(D).

[4]Under the statute, Commerce can make an affirmative determination in an original countervailing duty investigation (and issue a countervailing duty order) only if the aggregate net countervailable subsidy equals or exceeds one percent *ad valorem*. *See* 19 U.S.C. § 1671d(a)(3).

[5]Each of those six asserted challenges concerned a different subsidy rate: (1) lease for less than adequate remuneration (0.16%); (2) two-year rent abatement (0.38%); (3) Law 25/81 grants to Bolzano (0.28%); (4) Law 193/84 capacity reduction payments to Bolzano's former parent company, Falck (0.04%); (5) Law 193/84 capacity reduction payments to Valbruna (0.10%); and (6) European Social Fund assistance (0.05%). *See generally* AL Tech Specialty Steel Corp. v. United States, 28 CIT ____, _____ n.5, 2004 WL 2011471 at * 1 n.5 ("AL Tech I") (explaining how Valbruna/Bolzano's success on as few as one of its challenges (*i.e.*, the two-year rent abatement or the Law 25/81 grants), or on various combinations of its challenges, could suffice to drop the subsidy rate below the one percent *de minimis* threshold).

order, in essence, void *ab initio*.[6]  *See* AL Tech Specialty Steel Corp. v. United States, 28 CIT \_\_\_\_,

\_\_\_\_\_, 2004 WL 2011471 at * 1 ("AL Tech I").[7]

Two of Valbruna/Bolzano's six challenges disputed aspects of Commerce's analysis of the

adequacy of the remuneration paid as rent for the Bolzano Industrial Site under Valbruna's Lease

Agreement with the Province of Bolzano.  The other four challenges disputed Commerce's

determination that countervailable subsidies were conferred by assistance received under three

government programs – Law 25/81, Law 193/84, and the European Social Fund.[8]

---

[6]As AL Tech I noted, Commerce previously published notice of its revocation of the countervailing duty order at issue, effective retroactively to September 15, 2003, based on the agency's determination that revocation of the order would not likely "lead to continuation or recurrence of a countervailable subsidy" – *i.e.*, that any future "net countervailable subsidy likely to prevail is *de minimis*."  However, entries of the subject merchandise from Valbruna/Bolzano were subject to Commerce's countervailing duty order and the 1.28% countervailing duty deposit requirement from the publication date of the agency's affirmative Preliminary Determination until October 15, 2002 (when Commerce calculated the countervailing duty rate to be *de minimis*, in an administrative review).  Commerce's action left outstanding the question of the rate at which countervailing duties should be finally assessed on those entries.  *See* AL Tech I,  28 CIT at \_\_\_\_ n.6, 2004 WL 2011471 at * 1 n.6.

[7]AL Tech I expressly reserved judgment on one of Valbruna/Bolzano's arguments challenging Commerce's determinations on assistance provided under Laws 25/81 and 193/84 – specifically, Valbruna/Bolzano's contention that Commerce erred in finding that certain subsidies paid to Bolzano and its former parent, Falck, were "passed through" to Valbruna/Bolzano when Valbruna purchased Bolzano.  That issue had been previously remanded to Commerce, and then – at the request of all parties – stayed.  *See* AL Tech I, 28 CIT at \_\_\_\_ n.7, 2004 WL 2011471 at * 1 n.7.

Now, as a result of its reconsideration of other issues on remand, Commerce has recalculated the net subsidy rate for Valbruna/Bolzano (as discussed in greater detail below).  Because that revised rate is *de minimis*, Valbruna/Bolzano's "pass through" argument is moot.

[8]Like Valbruna/Bolzano, AL Tech too challenged Commerce's determination concerning the rent paid under Valbruna's Lease Agreement with the Province of Bolzano.  But, while Valbruna/Bolzano maintained that Commerce erred in finding that the Lease Agreement gave rise

AL Tech I sustained Commerce's determination that the Province of Bolzano's purchase of the Bolzano Industrial Site did not confer a subsidy, as well as Commerce's decision to use a nationwide (rather than a region-specific) benchmark to measure the adequacy of the rent paid under Valbruna's Lease Agreement with the Province of Bolzano. Commerce's determination that its "tying" practice was inapplicable to plant closure assistance provided under Law 193/84 was similarly upheld.[9]

However, a number of other issues were remanded to Commerce for the agency's further consideration. Now pending before the Court are Commerce's Final Results of Redetermination on Remand ("Remand Results"), together with the comments of all parties. *See* Valbruna's Comments on Department of Commerce Final Results of Redetermination on Remand Pursuant to Slip Op. 04-114 ("Valbruna Comments"); Comments of AL Tech Specialty Steel Corp. Et Al. on the Final

---

to *any* subsidy, AL Tech argued that Commerce erred in the other direction – by, in effect, *understating* the benefit conferred. AL Tech similarly contested Commerce's determination that, judged against prevailing market conditions, the Province's purchase of the Bolzano Industrial Site was not for more than adequate remuneration, and thus could not have conferred a countervailable subsidy on Valbruna/Bolzano. Both of AL Tech's claims were rejected in AL Tech I. *See generally* AL Tech I, 28 CIT at ____, 2004 WL 2011471 at * 4-15.

As discussed in greater detail below, although AL Tech participated fully in the initial briefing in this action (defending Commerce's original Final Determination to the hilt, except as to the two arguments specified immediately above) (*see* AL Tech I, 28 CIT at ____, 2004 WL 2011471 at * 2, noting AL Tech's "vigorous defense of Commerce's Final Determination"), AL Tech declined to participate substantively in post-remand briefing before the Court, and failed to participate at all in the remand proceedings before the agency.

[9]*See generally* AL Tech I, 28 CIT at ____, 2004 WL 2011471 at * 12 (purchase of Bolzano Industrial Site); 28 CIT at ____, 2004 WL 2011471 at * 13-15 (use of nationwide benchmark for rental rate); 28 CIT at ____, 2004 WL 2011471 at * 24 ("tying" practice as applied to plant closure assistance under Law 193/84).

Results of Redetermination on Remand ("AL Tech Comments"); Defendant's Response to Plaintiffs'

Comments Concerning the Remand Results ("Gov't Response").

As a result of its reconsideration of certain issues (summarized below), Commerce

recalculated the *ad valorem* net subsidy rate for Valbruna/Bolzano. The revised net subsidy rate is

0.65%, which is *de minimis*. *See* Remand Results at 10. Commerce therefore plans to revoke the

countervailing duty order with respect to Valbruna/Bolzano effective as of the date of publication

of that order – *i.e.*, September 15, 1998. *See* Remand Results at 9.[10]

As discussed more fully below, the Remand Results filed by Commerce comply with AL

Tech I. The Remand Results are therefore sustained.

## I. Analysis

Seven discrete issues were remanded to Commerce in AL Tech I. Commerce's

redetermination on just two of those seven issues – specifically, the two-year rent abatement and aid

paid under Law 25/81 – sufficed to lower the original net subsidy rate (1.28%) to a revised rate of

0.65%.

---

[10]In its comments on the draft remand results, Valbruna/Bolzano urged that, upon dissolution of the injunction of liquidation, Commerce should instruct the Bureau of Customs and Border Protection to liquidate all unliquidated entries without regard to countervailing duties, and to refund – with interest – all countervailing duty deposits made since the suspension of liquidation on January 7, 1998 (the date of Commerce's Preliminary Determination in the original investigation). Commerce generally concurs in Valbruna/Bolzano's request. However, as Commerce notes, the interest provisions of 19 U.S.C. § 1677g do not apply to entries prior to the issuance of an order. *See* Remand Results at 9-10 (*citing* 19 U.S.C. § 1671f).

A.  <u>The Two-Year Rent Abatement and Aid Under Law 25/81</u>

As explained in <u>AL Tech I</u>, Commerce's original Final Determination in this matter found that the two-year rent abatement which the Province granted to Valbruna under their Lease Agreement constituted a subsidy, resulting in a subsidy rate of 0.38%.  Valbruna/Bolzano disputed the agency's determination, maintaining that the rent abatement was part of a "bargained-for exchange" in which Valbruna agreed to assume the Province's responsibility for certain specific, urgent, initial extraordinary maintenance and environmental remediation projects related to the buildings that it leased from the Province.  *See generally* <u>AL Tech I</u>, 28 CIT at ____, 2004 WL 2011471 at * 15-18.

<u>AL Tech I</u> also considered Valbruna/Bolzano's protest of Commerce's decision to treat as a countervailable subsidy (with a calculated subsidy rate of 0.28%) certain restructuring assistance and long-term, low interest loans made to Bolzano under Provincial Law 25/81.[11]  Although Commerce itself conceded that Falck had repaid the aid at issue (as ordered by the European Commission), Commerce's original countervailing duty analysis ignored that repayment, reasoning that – because Falck had appealed the European Commission's order – the repayment was not legally final.  *See generally* <u>AL Tech I</u>, 28 CIT at ____, 2004 WL 2011471 at * 21-23.

On remand, Commerce reevaluated the record and reversed its determination on the two-year rent abatement.  Specifically, Commerce concluded "that the balance of the record evidence indicates

---

[11]Provincial Law 25/81 is "a general aid measure that provides grants to companies with limited investments in technical fixed assets.  It targets advanced technology, environmental investment, [and] restructuring projects."  Remand Results at 5; *see also* <u>AL Tech I</u>, 28 CIT at ____ n.53, 2004 WL 2011471 at * 21 n.53.

that the Province of Bolzano was legally obligated to undertake . . . [certain] initial, extraordinary

maintenance and environmental remediation projects," which Valbruna – in turn – agreed to assume

under its Lease Agreement with the Province as *quid pro quo* for a two-year rent abatement.

Accordingly, Commerce determined on remand that "the two-year lease abatement was a bargained-

for exchange of obligation[s] for consideration and, therefore, does not constitute a countervailable

subsidy." As a result of its redetermination, Commerce revised the subsidy rate associated with the

rent abatement from 0.38% to 0%. As the Remand Results observe, the effect of that change alone

suffices to reduce the total net subsidy rate to 0.90% – which is, as Commerce noted, "a rate that is

below the statutory *de minimis* one percent threshold." *See* Remand Results at 2-3.

In the course of the remand, Commerce also reevaluated its treatment of the Law 25/81 aid

paid to Falck, revising its position on that issue as well. With all of Falck's avenues of appeal

exhausted (and the repayment thus final), Commerce made adjustments to its calculations, to exclude

all post-1985 grants.[12] The effect was to drop the subsidy rate associated with the Law 25/81 aid

---

[12]Although Commerce elected – on remand – to factor into its countervailing duty analysis Falck's repayment of Law 25/81 aid, the agency takes pains to note in the Remand Results that it "do[es] not necessarily agree that it is appropriate to take into consideration, in a redetermination on remand, events that occurred subsequent to the period of investigation or even the date on which the original investigation was completed." Remand Results at 5.

As an initial matter, it is worth noting that AL Tech I did not mandate that Commerce take any particular action on remand. The remand was intentionally cast quite broadly – as an opportunity for the agency to "reconsider its treatment of the Law 25/81 aid in light of the repayment of that aid, as well as any other related issues," and then to fully articulate the rationale for whatever position it chose to take. *See* AL Tech I, 28 CIT at ____, 2004 WL 2011471 at * 23. The door thus was open for Commerce to reach any result on remand – provided, of course, that the result was both reasoned and supported by the record.

More fundamentally, however, Commerce's articulation of the central legal issue over-simplifies it a bit. As <u>AL Tech I</u> observed, any attempt to characterize the repayment issue for analytical purposes rapidly devolves into "an exercise in metaphysics." *See* <u>AL Tech I</u>, 28 CIT at ____ n.56, 2004 WL 2011471 at * 22 n.56. In the Remand Results, Commerce intimates that a countervailing duty determination is, in essence, predicated on a "snapshot" taken at the close of "the period of investigation" or, in any event, no later than "the date on which the original investigation was completed." But, even assuming that Commerce's "snapshot" theory is correct as a general principle, applying that concept to the circumstances presented here is like trying to nail jello to the wall.

Commerce emphasizes only the *timing* of the snapshot. However, any photographer knows that the resulting "photo" depends not only on *when* you take a snapshot, but also (and even more importantly) on the *focus* of that snapshot – *i.e.*, what you take the snapshot of. Here, is the proper focus the law requiring repayment (which gave rise to Falck's obligation to make repayment)? The repayment itself? Or the legal proceedings concerning Falck's obligation?

In this case, it is – in any event – undisputed that the European Commission's order requiring repayment was issued well before the close of "the period of investigation." *See* Commission Decision 96/617/ECSC, 1996 O.J. (L 274) 30 (July 17, 1996), discussed in Letter to Court from Counsel for Valbruna/Bolzano (Feb. 22, 2000). Moreover, Falck in fact made repayment before "the date on which the original investigation was completed." Indeed, in its Final Determination, Commerce itself expressly acknowledged that Falck had already made repayment. *See* <u>AL Tech I</u>, 28 CIT at ____, 2004 WL 2011471 at * 21.

In short, even under Commerce's "snapshot" theory, there is a compelling case that the agency's initial Final Determination should have treated the Law 25/81 aid as repaid – whether because repayment already had been ordered *before the close of the period of investigation*, or because repayment had in fact already been made *by the date on which the original investigation was completed*.

Commerce's initial analysis ignored the repayment only because the European Commission's order was being appealed. But it is unclear why – in taking any "snapshot" – Commerce would focus on the speculative potential *future* outcome of a judicial appeal, rather than on the *existing* status of the repayment itself. It is even less clear why one would assume, as Commerce did, that the status quo – here, the European Commission's order requiring repayment – would be overturned on appeal, particularly in light of the track record in such cases. *See* Letter to Court from Counsel for Valbruna/Bolzano (May 31, 2001), Att. 2 at 2 (noting that court challenges to decisions of the European Commission in such cases are rarely successful, that – of the 13 court decisions rendered in such cases between 1997 and the end of the 2000 – there was only one successful challenge, and that, in that one particular case (unlike this case), the applicant was challenging the granting of aid

from 0.28% to 0.03%.  *See* Remand Results at 5-6.

## B.  The Five Remaining Issues

Because its revised determination on the treatment of Valbruna's two-year rent abatement

(as well as its revised determination on the Law 25/81 aid) rendered the overall total subsidy rate *de*

*minimis*, Commerce found it unnecessary to reach the merits of the five remaining issues that <u>AL</u>

<u>Tech I</u> had remanded to the agency.[13]

---

to a competitor).  Nor is it clear why, after Falck lost its initial appeal, Commerce reversed its position and found (in an administrative review) that the Law 25/81 aid was not countervailable – notwithstanding the fact that an appeal to a higher court was then pending.  *See* <u>AL Tech I</u>, 28 CIT at ____, 2004 WL 2011471 at * 22.  (At least on this record, Commerce's treatment of the repayment and the related legal proceedings is arguably not only inadequately reasoned, but also inconsistent.)

Finally, as <u>AL Tech I</u> indicated, the law requiring repayment was itself already in existence at the time of Commerce's "snapshot," without regard to either the order mandating repayment, or the status of the repayment itself, or the pendency of any appeals.  Thus, metaphysically speaking, to the extent that the "snapshot" was intended to focus on Falck's legal obligation to make repayment, that legal obligation was already in existence before the end of the period of investigation – even if there had not yet been a final, non-appealable judicial determination on its application to Falck.  *See* <u>AL Tech I</u>, 28 CIT at ____ n.56, 2004 WL 2011471 at * 22 n.56.

Whatever the merits of the agency's position, the subject of Commerce's treatment of Law 25/81 aid (including all underlying legal issues) is now largely academic.  As discussed above, Commerce's remand determination on the two-year rent abatement issue is alone sufficient to render a total net subsidy rate below the statutory *de minimis* one percent threshold.

[13]As a basis for declining to reach the merits of the five remaining issues, the Remand Results specifically cite only to Commerce's revised determination on the two-year rent abatement; they do not expressly reference the revised determination on aid under Law 25/81.  *See*, *e.g.*, Remand Results at 4 (noting that, due to the revised determination on the two-year rent abatement, the agency need not reach either of the issues concerning proposed adjustments to the "benchmark" used to evaluate the adequacy of the rent paid by Valbruna under its Lease Agreement with the Province).

As to each of those five issues, Commerce concluded that the issue was moot, since – no matter how the particular issue was resolved – the overall total net subsidy rate would nevertheless remain *de minimis*. *See generally* Remand Results at 9 ("even if [Commerce] decided each of the remaining five issues against Valbruna, the net subsidy rate would be *de minimis* and, therefore, [Commerce] need not address the issues"). *See also* Remand Results at 3-4 (finding no need to reconsider whether the national benchmark rate of return of 5.7% used by the agency to evaluate the adequacy of the remuneration paid as rent by Valbruna to the Province assumed that responsibility for extraordinary maintenance was borne by lessor, or by lessee); *id*. at 4-5 (finding no need to reconsider whether depreciation of buildings should have been factored into the agency's analysis of the adequacy of the remuneration paid by Valbruna under the Lease Agreement); *id*. at 6 (finding no need to reconsider the methodology for application of the "small grants" test used in analyzing certain grants under Law 193/84); *id*. at 7 (finding no need to reconsider whether EU/European Social Fund ("ESF") Objective 4 funding was regionally specific to Italy); *id*. at 8 (finding no need to reconsider whether Italian ESF Objective 4 funding was regionally specific to the Province of Bolzano).[14]

---

[14]*Compare* AL Tech I, 28 CIT at ____, 2004 WL 2011471 at * 18-19 (remand to determine whether the benchmark rate of return assumes that responsibility for ongoing extraordinary maintenance is borne by lessor, or by lessee); 28 CIT at ____, 2004 WL 2011471 at * 19-21 (remand to reconsider the treatment of depreciation of buildings in analyzing the adequacy of remuneration paid by Valbruna under the Lease Agreement); 28 CIT at ____, 2004 WL 2011471 at * 23-25 (remanding to reconsider the methodology for application of the "small grants" test in analyzing certain grants under Law 193/84); 28 CIT at ____, 2004 WL 2011471 at * 25-29 (remand to reconsider the "specificity" of certain ESF funding).

C. <u>The Parties' Comments on the Remand Results</u>

Valbruna/Bolzano endorses Commerce's revised determinations on both the rent abatement issue and the Law 25/81 issue, and concurs that – in light of those determinations and the resulting revised net subsidy rate, which is below the *de minimis* threshold – there is no need for the agency to reconsider the five other issues remanded in <u>AL Tech I</u>.[15] Valbruna/Bolzano therefore urges that the Remand Results be sustained. *See* Valbruna Comments at 2. The Government's comments are to the same general effect. *See* Gov't Response at 4 (asserting that "the Court should sustain the Remand Results").[16]

---

[15]In its comments on the Remand Results, Valbruna/Bolzano "specifically reserves the right to submit further comments on all issues subject to remand" if Commerce's remand determinations on the two-year rent abatement and the Law 25/81 aid are modified. As Valbruna/Bolzano notes, "[i]n the event of such modification, the remaining five issues may not be moot." *See* Valbruna Comments at 2.

[16]The Government's Response to the comments on the Remand Results confuses certain aspects of the Remand Results relating to the Lease Agreement between Valbruna and the Province. *See generally* Gov't Response at 3 (asserting that "Commerce further concluded that [two] issues . . . concerning . . . *the rent abatement agreement* were rendered moot . . .") (emphasis added).

Commerce found, on remand, that the two-year rent abatement which the Province granted to Valbruna under the Lease Agreement did not confer a subsidy. Because the rent abatement issue alone was enough to reduce the overall net subsidy rate below the *de minimis* threshold, Commerce elected not to reach two other issues arising out of the Lease Agreement – specifically, (a) whether the national benchmark rate of return of 5.7% that Commerce used to evaluate the adequacy of the rent specified in the Lease Agreement assumed that responsibility for extraordinary maintenance was borne by lessor, or by lessee, and (b) whether depreciation of buildings should have been factored into the agency's analysis of the adequacy of the rent specified in the Lease Agreement.

Contrary to statements in the Government's Response, the latter two issues do not concern the two-year rent abatement. Rather, they concern the adequacy of the amount of rent due under the Lease Agreement in those years when rent was required to be paid (*i.e.*, in all years other than the two years when rent was abated). Although both the two-year rent abatement and the adequacy of the amount of rent relate to the Lease Agreement, they are in fact distinct.

AL Tech is a different story. In its comments filed with the Court, AL Tech states that it "respectfully disagrees" with the Remand Results, but does not substantively brief its position. *See* AL Tech Comments at 2. Moreover, as the Government pointedly observes, AL Tech failed to participate at all in the remand proceedings:

> No party objected to Commerce's determinations during the administrative proceedings on remand although they were provided with an opportunity to comment. *Indeed, AL Tech declined to participate*. *See* Index to Administrative Record (reflecting absence of *any* communications from AL Tech).

Gov't Response at 2 (emphasis added). Thus, as the Government emphasizes, AL Tech voiced its disagreement with the Remand Results *for the first time* in its comments filed with the Court. *See* Gov't Response at 2 ("Valbruna supports the Remand Results. AL Tech, for the first time, in its comments to the Court, does not.").

Asserting that the opinion in AL Tech I "drives the results of the Remand Determination," AL Tech apparently seeks to excuse its failure to participate in the remand proceedings by implying that participation would have been futile. Taking particular exception to Commerce's revised determination on the two-year rent abatement, and asserting broadly that "[t]he Remand Determination on [that] issue appears to be consistent with the Court's opinion," AL Tech states that it "will not repeat the arguments previously made to [the] Court," and will instead "reserve all future argument for appeal, if any, to the Court of Appeals." AL Tech Comments at 2.

Contrary to AL Tech's implications, however, AL Tech I did not mandate that Commerce reverse its original determination that the Province had no legal obligation to undertake the initial,

extraordinary maintenance and environmental remediation projects at issue.[17]  Rather, that opinion merely highlighted various discrepancies in the agency's logic (*see*, *e.g.*, 28 CIT at \_\_\_\_, 2004 WL 2011471 at * 16-17), and noted the absence of citations to record evidence to substantiate various aspects of the agency's analysis (28 CIT at \_\_\_\_, 2004 WL 2011471 at * 16 nn.38-39).  Nor did <u>AL Tech I</u> direct Commerce to find that the two-year rent abatement was the *quid pro quo* (much less an appropriate one) for Valbruna's agreement to take responsibility for those projects.  To the contrary, the remand on the two-year rent abatement issue was deliberately framed in the broadest possible terms, giving Commerce an unusually wide berth "to reconsider its determination and to fully articulate the rationale for that determination, taking into consideration the record evidence as well as all parties' arguments, both at the administrative level and in this forum."  <u>AL Tech I</u>, 28 CIT at \_\_\_\_, 2004 WL 2011471 at * 18.  Simply stated, nothing in <u>AL Tech I</u> ruled out the possibility that Commerce could have reached the same result on the two-year rent abatement that it reached in the original Final Determination, albeit on an expanded record – or even on the same record, with a more clearly articulated and supported rationale.

In sum, there can be no suggestion that <u>AL Tech I</u> dictated Commerce's determination on remand, obviating the domestic industry's need to participate (at least in some limited fashion) in the remand proceedings.  Ultimately, of course, it will be for the Court of Appeals to determine

---

[17]*See* <u>AL Tech I</u>, 28 CIT at \_\_\_\_, 2004 WL 2011471 at * 16 (citing Commerce's original Final Determination, and noting that "based on its analysis of the two main projects that Valbruna completed," Commerce concluded there "that the bargain struck between the Province and Valbruna was meaningless, because (according to Commerce) the measures that Valbruna undertook were not obligations of the Province, and thus could not have constituted 'consideration' for the rent abatement granted to Valbruna").

whether AL Tech's failure to participate in the remand proceedings (and to file any substantive comments on the Remand Results with the Court) effectively waived any of its rights, should AL Tech seek to take an appeal. However, it is black letter law that – to properly preserve an issue for appeal – a party generally must first exhaust its remedies by making its argument before the agency, then brief that argument before the trial court. Arguments that are not properly preserved are waived. *See generally* <u>Novosteel SA v. United States</u>, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002).

When a party elects to passively sit on the sidelines throughout remand proceedings, it is – "[a]s a matter of litigation fairness and procedure" (284 F.3d at 1274) – generally unreasonable to expect the agency (and the other parties) to try to guess how any arguments that the silent party may have previously advanced would apply to the agency's draft remand results. Under these circumstances, the agency (and the other parties) may well be entitled to assume that the silent party has decided, on reflection, that it concurs in the agency's draft remand results (or that, for some other reason, the party is abandoning its arguments). A party that chooses to absent itself from proceedings – whether at the administrative level or in a judicial forum – does so at its peril.

## II. Conclusion

For the reasons set forth above, the Final Results of Redetermination on Remand in this matter are sustained. Judgment will enter accordingly.

_____/s/_____
Delissa A. Ridgway
Judge

Decided:    March 9, 2005
            New York, New York