**Slip Op. 08-97**

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **GERBER FOOD (YUNNAN) CO., LTD. and GREEN FRESH (ZHANGZHOU) CO., LTD.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>and<br><br>**COALITION FOR FAIR PRESERVED MUSHROOM TRADE,**<br><br>Defendant-Intervenor. | **Before: Timothy C. Stanceu, Judge**<br><br>**Court No. 03-00544** |

## OPINION

[Affirming the redetermination of the final results of an antidumping administrative review in which the United States Department of Commerce applied "facts otherwise available" and "adverse inferences" to certain sales transactions]

Dated: September 16, 2008

*Garvey Schubert Barer* (*William E. Perry*, *Lizbeth R. Levinson*, and *Ronald M. Wisla*) for plaintiffs.

*Gregory G. Katsas*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Richard P. Schroeder*); *Scott D. McBride*, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Collier, Shannon, Scott, PLLC* (*Michael J. Coursey* and *Adam H. Gordon*) for defendant-intervenor.

Stanceu, Judge: This matter arose from plaintiffs' contesting the final results ("Final Results") that the International Trade Administration, United States Department of Commerce ("Commerce" or the "Department") issued in the third administrative review of an antidumping duty order applying to imports of certain preserved mushrooms from the People's Republic of China ("China"). *See Certain Preserved Mushrooms From the People's Republic of China: Final Results and Partial Rescission of the New Shipper Review and Final Results and Partial Rescission of the Third Antidumping Duty Administrative Review*, 68 Fed. Reg. 41,304 (July 11, 2003) ("*Final Results*"). The third administrative review pertained to entries of subject mushrooms made during the period beginning February 1, 2001 and ending January 31, 2002 ("period of review"). *Id*. at 41,305.

In *Gerber Food (Yunnan) Co., Ltd. v. United States*, 29 CIT 753, 775-76, 387 F. Supp. 2d 1270, 1290 (2005) ("*Gerber I*"), the court remanded the final results in the third administrative review, holding that the Department's application of the "facts otherwise available" and "adverse inferences" provisions of 19 U.S.C. § 1677e (2000) was not supported by substantial record evidence and was otherwise not in accordance with law. In *Gerber Food (Yunnan) Co., Ltd. v. United States*, 31 CIT __, 491 F. Supp. 2d 1326, 1354 (2007) ("*Gerber II*"), the court held that the Department's Redetermination Pursuant to Court Remand ("First Remand Redetermination") complied with the remand order in *Gerber I* in some respects but not others and remanded the redetermination to Commerce for further proceedings.

Before the court are the Results of Redetermination Pursuant to Remand ("Second Remand Redetermination") that Commerce issued in response to the court's remand order in *Gerber II*. No party filed comments on Commerce's draft results or on the Second Remand

Redetermination. The court affirms the Second Remand Redetermination and enters judgment accordingly.

## I. BACKGROUND

The court's opinions in *Gerber I* and *Gerber II* set forth in detail the procedural background of this judicial review proceeding. *See Gerber I*, 29 CIT at 755-760, 387 F. Supp. 2d at 1273-78; *Gerber II*, 31 CIT at __, 491 F. Supp. 2d at 1330-33. Summarized below are relevant background and developments that occurred since *Gerber II* was decided on May 24, 2007.

In the Final Results, Commerce relied on 19 U.S.C. § 1677e in applying a procedure it termed "total adverse facts available" to determine the antidumping duty assessment rates of Gerber Food (Yunnan) Co., Ltd. ("Gerber"), a Chinese producer, and Green Fresh Foods (Zhangzhou) Co., Ltd. ("Green Fresh"), a Chinese exporter, of subject mushrooms. *Final Results*, 68 Fed. Reg. at 41,306-07. In applying this procedure, Commerce acted on its findings that Gerber and Green Fresh had entered into a business relationship that evaded the antidumping laws by inappropriately allowing Gerber to take advantage of Green Fresh's comparatively low antidumping duty deposit rate. *Id*. at 41,306. According to Commerce, Green Fresh and Gerber misrepresented the true nature of their relationship by claiming that Green Fresh had acted as Gerber's agent in arranging for the exportation of shipments of subject merchandise during the period of review. *Id*. Commerce found that Green Fresh never acted as Gerber's agent for most of the reported transactions and that Gerber had "in fact arranged shipment of all of its sales of subject merchandise and paid Green Fresh a fee to use Green Fresh's sales invoices for this purpose in order to take advantage of Green Fresh's comparatively

low cash deposit rate . . . ." *Id.* Commerce concluded that plaintiffs' misrepresentations in their questionnaire responses and evasion of cash deposit requirements discredited all the information submitted by plaintiffs during the review for the purpose of calculating their individual antidumping duty assessment rates. *Id.* at 41,306-07. Accordingly, in the Final Results, Commerce assigned to both plaintiffs an antidumping duty assessment rate of 198.63%, which corresponded to the rate Commerce assigned to respondents that failed to demonstrate independence from control of the government of China and which was the highest rate Commerce applied in the third administrative review. *Id.* at 41,307.

Commerce's Final Results differed from the approach the agency had taken in the preliminary results of the third administrative review ("Preliminary Results"). *See Certain Preserved Mushrooms from the People's Republic of China: Prelim. Results and Partial Rescission of Fourth New Shipper Review and Prelim. Results of Third Antidumping Duty Administrative Review*, 68 Fed. Reg. 10,694, 10,697 (Mar. 6, 2003) ("*Prelim. Results*"). Though Commerce expressed disapproval over the export agreement between Gerber and Green Fresh in the Preliminary Results, the agency did not resort to the use of "facts otherwise available" or "adverse inferences" and instead calculated dumping margins for Gerber and Green Fresh based on their reported data. *Id.* at 10,697, 10,702. Commerce's calculation produced preliminary antidumping duty margins of 1.17% for Gerber and 46.41% for Green Fresh. *Id.* at 10,702. Commerce stated, in the Preliminary Results, that it intended to assign as a cash deposit rate to both Gerber and Green Fresh the higher of the two antidumping duty rates calculated in the Preliminary Results for either respondent, *i.e.* 46.41%, because of concerns about the circumvention of antidumping duty cash deposits. *Id.* In contrast, Commerce applied a rate of

198.63% to both Gerber and Green Fresh in the Final Results. *Final Results*, 68 Fed. Reg. at 41,307.

*Gerber I* held that the 198.63% antidumping duty assessment rate Commerce assigned to all of Gerber and Green Fresh's transactions was unsupported by substantial evidence on the record and was otherwise not in accordance with law. *Gerber I*, 29 CIT at 775-76, 387 F. Supp. 2d at 1290. Because Commerce had failed to support with substantial evidence on the record certain findings of fact that were essential to the proper application of the "facts otherwise available" and "adverse inferences" provisions of 19 U.S.C. § 1677e, the court concluded that Commerce exceeded its authority under those provisions. *Id*. at 761, 387 F. Supp. 2d at 1278. The court further concluded that "[t]he choice of the [China]-wide rate . . . bore no relationship to record evidence needed to calculate actual antidumping margins pertaining to shipments of mushrooms associated with Gerber or Green Fresh during the period of review" and that "Commerce does not attempt to establish such a relationship." *Id*. at 772-73, 387 F. Supp. 2d at 1288. The court ordered Commerce, on remand, to "calculate individual antidumping duty assessment rates for Gerber and Green Fresh in accordance with applicable statutory requirements." *Id*. at 775, 387 F. Supp. 2d at 1290.

In its First Remand Redetermination, Commerce again invoked the "facts otherwise available" provision of § 1677e(a) and "adverse inferences" provision of § 1677e(b). Commerce claimed that substantial record evidence supported the application of "facts otherwise available" under § 1677e(a)(2) with respect to both Gerber and Green Fresh, and with respect to a group of twenty-four sales transactions which involved merchandise produced by Gerber and for which entry documentation submitted to Customs identified Green Fresh as the exporter. *See* First

Remand Redetermination 29-34. Commerce concluded that both parties withheld requested information, provided information after the applicable deadline, significantly impeded the administrative review proceeding, and provided unverifiable information, thereby satisfying the criteria of subparagraphs (A)-(D) of § 1677e(a)(2). *Id*. at 31-33. Commerce also made separate findings that Gerber and Green Fresh, for purposes of 19 U.S.C. § 1677e(b), failed to act to the best of their respective abilities in complying with the Department's requests for information. *Id*. at 37-41.

In calculating the antidumping duty assessment rates for Gerber and Green Fresh in the First Remand Redetermination, Commerce limited the application of "facts otherwise available" and "adverse inferences" to the twenty-four sales transactions of subject merchandise produced by Gerber for which the entry documentation submitted to Customs identified Green Fresh as the exporter. *Id*. at 49-51. To calculate Gerber's antidumping duty assessment rate, Commerce assigned the 198.63% rate to each of these twenty-four transactions. *Id*. at 6, 50-51. Commerce used pertinent information developed during the review, without resort to the "facts otherwise available" or "adverse inferences" provisions of 19 U.S.C. § 1677e, to calculate the antidumping duty for the remaining ten of Gerber's sales transactions of subject merchandise. *Id*. at 9, 49, 54. To calculate Green Fresh's antidumping duty assessment rate, Commerce attributed to Green Fresh the same twenty-four transactions at an assigned rate of 198.63%. *Id*. at 50-51. Commerce used pertinent information developed during the review, without resort to the "facts otherwise available" or "adverse inferences" provisions of 19 U.S.C. § 1677e, to calculate the antidumping duty for the 134 sales transactions in which Green Fresh actually exported merchandise that was subject to the administrative review. *Id*. at 18-19, 49-51, 54. As a result

of these changes, Gerber's overall assessment rate was reduced from 198.63% to 150.79% and

Green Fresh's overall assessment rate was reduced from 198.63% to 84.26%. *Id.* at 6.

In *Gerber II*, the court concluded that Commerce, in the First Remand Redetermination,

had supported with substantial record evidence its findings that both Gerber and Green Fresh

withheld requested information and substantially impeded the review proceeding. *Gerber II*,

31 CIT at __, 491 F. Supp. 2d at 1334-43. The court found that Commerce, on those findings,

could invoke the "facts otherwise available" provision of 19 U.S.C. § 1677e(a) with respect to

both plaintiffs. *Id.* The court also concluded that substantial record evidence supported

Commerce's determination that each plaintiff failed to cooperate "'by not acting to the best of its

ability to comply with a request for information[,]'" and that as a result Commerce could invoke

the "adverse inferences" provision of 19 U.S.C. § 1677e(b) as to each plaintiff. *Id.* at __, 491

F. Supp. 2d at 1343-44 (quoting 19 U.S.C. § 1677e(b)).

The court, however, did not uphold Commerce's determination with respect to the

twenty-four transactions. *Id.* at __, 491 F. Supp. 2d at 1346. As the court explained,

> The Redetermination does not present evidentiary support or adequate reasoning
> for attributing the same twenty-four transactions to two parties, *i.e.*, to both
> Gerber and to Green Fresh, despite the finding that Gerber was the producer,
> seller, and exporter of the merchandise involved.
> . . .
> Commerce . . . unlawfully applied § 1677e by attributing to Green Fresh the
> twenty-four transactions for which it found Gerber to be the producer, seller, and
> exporter. Commerce failed to support with substantial record evidence, and did
> not explain adequately, its decision to double-count those transactions.

*Id.* at __, __, 491 F. Supp. 2d at 1346, 1354. Furthermore, due to Commerce's failure to

establish a rational relationship between the 198.63% rate and the actual transaction-specific

margins of Gerber or Green Fresh, the court ruled unlawful Commerce's assignment of the

198.63% rate to the twenty-four transactions. *Id*. at __, __, 491 F. Supp. 2d at 1334, 1348-53.

The court in *Gerber II* ordered Commerce to recalculate the assessment rates that were

applied to Gerber and Green Fresh. *Id*. at __, 491 F. Supp. 2d at 1354. Under the court's

remand order, Commerce could choose to invoke "facts otherwise available" and "adverse

inferences" with respect to the twenty-four transactions of Gerber for which it invoked 19 U.S.C.

§ 1677e in the First Remand Redetermination. *Id*. In doing so, however, Commerce was

required to use a rate other than 198.63% that satisfied the requirements of 19 U.S.C. § 1677e,

including its corroboration requirement. *Id*. With respect to Green Fresh, the court in *Gerber II*

ordered Commerce not to rely on its analysis in the First Remand Redetermination attributing to

Green Fresh the twenty-four transactions on which it invoked 19 U.S.C. § 1677e as this analysis

was contrary to law. *Id*.

In response to the court's order in *Gerber II*, Commerce filed its Second Remand

Redetermination on September 19, 2007. Commerce again relied on the "facts otherwise

available" and the "adverse inferences" provisions of § 1677e and assigned to Gerber an

antidumping assessment rate of 121.33% for the twenty-four sales transactions of subject

merchandise produced by Gerber that Commerce found to have been exported to the United

States with Green Fresh named as the exporter. Second Remand Redetermination 2-3.

Commerce obtained this rate from the first administrative review of Gerber that covered the

period of review of August 5, 1998 to January 31, 2000. *Id*. at 3. The rate is based on Gerber's

single sale of subject merchandise for export during that period of review. *See id*. The

recalculation reduced Gerber's weighted average antidumping duty margin from 150.79% to 92.11%. *Id.* at 5.

The Department did not rely on the "facts otherwise available" and "adverse inferences" provisions of 19 U.S.C. § 1677e in calculating the antidumping duty assessment rate for Green Fresh. *Id.* at 6. The Department did not attribute to Green Fresh the twenty-four sales transactions of subject merchandise produced by Gerber that Commerce found to have been exported to the United States with Green Fresh named as the exporter. *Id.* The Second Remand Redetermination reduced Green Fresh's weighted-average margin from 84.26% to 31.55%. *Id.*

No party filed comments on the Second Remand Redetermination. *Id.* at 1. Defendant has filed a statement requesting that the court affirm the remand redetermination, enter judgment, and dismiss this case. Def.'s Statement Regarding Remand Redetermination 1 ("Def.'s Statement").

## II. DISCUSSION

Under the applicable standard of review, the Department's Second Remand Redetermination must be held unlawful if found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

The first issue presented by the Second Remand Redetermination is whether the Department's determination to apply the 121.33% antidumping duty assessment rate to the twenty-four sales transactions of subject merchandise produced by Gerber for which Commerce invoked 19 U.S.C. § 1677e in the Second Remand Redetermination complies with the remand

order issued in *Gerber II*, is based on substantial record evidence, and is otherwise in accordance with law. The second issue is whether Commerce's determination of a 31.55% antidumping duty rate for Green Fresh satisfies those same requirements.

A. Assignment of the 121.33% Antidumping Duty Rate to the Twenty-Four Sales by Gerber

The court upholds Commerce's assigning an antidumping duty rate of 121.33% to the twenty-four sales transactions of subject merchandise produced by Gerber for which Commerce invoked 19 U.S.C. § 1677e in the Second Remand Redetermination. As discussed below, the court concludes that the 121.33% rate is the only antidumping duty assessment rate Commerce determined for Gerber in a previous phase of this antidumping proceeding that was based on Gerber's actual sales data and that could serve as a deterrent to non-compliance. Moreover, Gerber has filed no objection to the assignment of this rate to the twenty-four entries in question.

As the court held in *Gerber II*, Commerce has the authority under § 1677e to apply "facts otherwise available" and "adverse inferences" with respect to the twenty-four transactions of Gerber described above. In using an adverse inference, Commerce may rely on information from the petition, the final determination in the investigation, any previous administrative review, or any other information placed on the record. 19 U.S.C. § 1677e(b).

The Court of Appeals for the Federal Circuit has stated with respect to 19 U.S.C. § 1677e that "[p]articularly in the case of an uncooperative respondent, Commerce is in the best position, based on its expert knowledge of the market and the individual respondent, to select adverse facts that will create the proper deterrent to noncooperation with its investigations and assure a reasonable margin." *F.LLI De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,* 216 F.3d 1027, 1032 (Fed. Cir. 2000). "It is clear from the Congress's imposition of the

corroboration requirement in 19 U.S.C. § 1677e(c) that it intended for an adverse facts available rate to be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." *Id.*

The court observes that the 121.33% rate assigned to Gerber in the first administrative review is the only rate Commerce determined for Gerber in a previous phase of this antidumping proceeding that was based on information from an actual sale or sales by Gerber and that could serve as a deterrent to noncompliance.[1]  As Commerce explained in the Second Remand Redetermination, the 121.33% rate "was derived from a sale of subject merchandise made and exported by Gerber to the United States . . . ."  Second Remand Redetermination 4.  That rate "[was] derived from Gerber's own verified data" and "was calculated from a [period of review] only two years prior to the period of this administrative review."  *Id.*; *see also Am. Final Results of First New Shipper Review and First Antidumping Duty Administrative Review: Certain Preserved Mushrooms From the People's Republic of China*, 66 Fed. Reg. 35,595 (July 6, 2001). Because the rate is higher than the 1.17% rate Commerce calculated for Gerber in the Preliminary Results, it may serve as a deterrent to the failure to cooperate.  *See Prelim. Results*, 68 Fed. Reg. at 10,702.

---

[1] Commerce states in the Results of Redetermination Pursuant to Remand ("Second Remand Redetermination") that the 121.33% rate is derived from "the most recent prior review in which [Gerber] actively participated . . . ."  Second Remand Redetermination 4.  This statement appears to be incorrect.  Gerber participated in the second administrative review (in which it was assigned the rate of 0%), which immediately preceded the review at issue in this case.  *See Am. Final Results of Antidumping Duty Administrative Review: Certain Preserved Mushrooms from the People's Republic of China*, 67 Fed. Reg. 51,833, 51,834 (Aug. 9, 2002).

In contrast, the antidumping duty assessment rates assigned to Gerber in the investigation and in the other previous administrative reviews, which Commerce could consider in using an adverse inference pursuant to § 1677e(b), either lack a relationship to Gerber's actual sales or are not high enough to serve as a deterrent to non-compliance. Gerber was not a respondent exporter, and accordingly did not receive its own rate, in the antidumping investigation, in which Gerber and eight other exporter/manufacturers were assigned the rate of 142.11%. *Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms From the People's Republic of China*, 64 Fed. Reg. 8,308, 8,310 (Feb. 19, 1999). Following its receiving the 121.33% rate in the first administrative review, Gerber was assigned a rate of 0% in the second administrative review. *Am. Final Results of Antidumping Administrative Duty Review: Certain Preserved Mushrooms from the People's Republic of China*, 67 Fed. Reg. 51,833, 51,834 (Aug. 9, 2002). A rate of 0% obviously would not provide any deterrent to non-cooperation.

The court also notes the absence of an objection by Gerber to the use of the 121.33% rate. Gerber had the opportunity to file comments on the draft remand redetermination before Commerce during the remand proceeding, and the opportunity to file comments with the court on the Second Remand Redetermination, but in both instances chose not to do so. *See* Def.'s Statement 1. It may be fairly inferred from Gerber's silence that it concurs with the Second Remand Redetermination. *See Wuhan Bee Healthy Co., Ltd. v. United States*, 32 CIT __, __, Slip Op. 08-61, 12 (May 29, 2008) ("Under such circumstances, Commerce 'may well be entitled to assume that the silent party has decided, on reflection, that it concurs in the agency's [remand results],' and the court will uphold the parties' concurrence." (quoting *AL Tech*

*Specialty Steel Corp. v. United States*, 29 CIT, 276, 285, 366 F. Supp. 2d 1236, 1245 (2005)).

The court therefore affirms Commerce's determination to assign the 121.33% rate to the twenty-

four above-mentioned transactions as an application of the "facts otherwise available" and

"adverse inferences" provisions of 19 U.S.C. § 1677e.

### B. Assignment of the 31.55% Antidumping Duty Rate to Green Fresh

The court further concludes that Commerce's determination of a rate of 31.55% for

Green Fresh complies with the court's remand order in *Gerber II* and is based on findings of fact

supported by substantial record evidence. In the Second Administrative Review, Commerce did

not rely on its prior unlawful analysis attributing to Green Fresh the twenty-four sales

transactions of subject merchandise produced by Gerber that Commerce found to have been

exported to the United States with Green Fresh named as the exporter. Second Remand

Redetermination 5-6. In calculating an assessment and cash deposit rate for Green Fresh,

Commerce did not apply "facts otherwise available" and "adverse inferences." *Id*. at 6. There is

no indication, either in the record or from the parties, that Commerce relied on anything other

than pertinent information developed during the review to calculate Green Fresh's antidumping

duty assessment rate. *See id*. at 5-6. The court, therefore, affirms the Department's

determination of a 31.55% assessment rate for Green Fresh's entries during the period of review.

### III. CONCLUSION

For the reasons stated above, the court sustains Commerce's assignment of a 121.33%

antidumping duty assessment rate to the twenty-four sales transactions of subject merchandise

produced by Gerber for which Commerce invoked 19 U.S.C. § 1677e in the Second Remand

Redetermination and Commerce's determination of an antidumping duty assessment rate of

31.55% for Green Fresh.  The court therefore affirms Commerce's Second Remand

Redetermination and will enter judgment accordingly.


                                                                        /s/ Timothy C. Stanceu
                                                                        Timothy C. Stanceu
                                                                        Judge

Dated:  September 16, 2008
           New York, New York